

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GEORGIA L. LOUVIERE** | § | Case No. 07-10529 |
| | § | |
| Debtor | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter is before the Court to consider confirmation of the Debtor's Chapter

13 Plan proposed by Georgia L. Louviere ("Debtor"), the debtor in the above-referenced

Chapter 13 case.  Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the

confirmation of the Plan on good faith grounds and upon the allegation that the Debtor is

not applying all of her projected disposable income in contravention of 11 U.S.C.

§1325(b)(1)(B), as that statute was amended by the passage of the Bankruptcy Abuse

Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Specifically, the Trustee

contends that the Debtor's plan fails to provide the minimum dividend to unsecured

creditors as mandated by the application of the means test incorporated into §1325(b) and

that, because the Debtor failed to demonstrate that a sufficient contribution is being made

by her non-filing spouse to the household expenses of the family unit, the Debtor's plan

has not been proposed in good faith.[1]  At the conclusion of the hearing, the Court took the

matter under advisement.  This memorandum of decision disposes of all issues pending

---

[1] Other confirmation objections raised by the Trustee were resolved prior to the hearing,
including the dedication of the Debtor's future tax refunds to the plan base.

before the Court.[2]

## <u>Background</u>

The Debtor, Georgia L. Louviere, is a retired schoolteacher who filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code and who now seeks to confirm her Chapter 13 Plan. Over the applicable commitment period of five years, the Debtor proposes to make a monthly payment of $750.00 per month for the first 17 months, with payments increasing to $1,100 per month for months 18 through 60 of the plan following the satisfaction of certain indebtedness secured by a motor vehicle. The implementation of the proposed plan would result in a projected 61.38% dividend to unsecured creditors.

The Debtor, who is married but whose husband did not join in the voluntary petition, was a teacher with the Vidor Independent School District in the six-month period prior to the filing of this case and in that position earned a monthly gross salary of $3,915. Combined with the $7005 monthly gross income of her non-debtor spouse in that pre-petition period, the Debtor's "current monthly income" ("CMI"), as that term is defined by 11 U.S.C. §101(10A),[3] when extrapolated into an annual amount, exceeds the median

---

[2] This Court has jurisdiction to consider confirmation of the plan pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

[3] New §101(10A) provides that:

The term "current monthly income" —

(A) means the average monthly income from all sources that the debtor receives . . . without

family income for two-person households in this state.[4]  If such pre-petition sums were

actually expected to be received by the Debtor and her non-filing spouse in the post-

petition period, the Debtor's disposable income calculation would be subjected to certain

expense limitations incorporated by §707(b)(2) and, as calculated through Part V of the

Debtor's original Form 22C,[5] would require a monthly payment to unsecured creditors of

$1,435.39 for the 60-month period – an amount sufficient to pay the estimated unsecured

indebtedness of the Debtor in full with 10% interest prior to the expiration of the 60-

month period.[6]  The Trustee primarily bases his disposable income objection upon that

calculation and asserts that the Debtor's failure to propose a plan to provide such a

dividend to unsecured creditors in this case precludes confirmation.

     However, it is undisputed that the Debtor's income has drastically changed as a

result of her retirement from her teaching position with the Vidor ISD in the month prior

---

regard to whether such income is taxable income, derived during the 6-month period ending on—

     (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii) . . . and

(B) includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . .

[4]  The "current monthly income" of the Debtor and her non-filing spouse in the amount of $10,920.00, as reflected in the Debtor's original Form 22C, extrapolates into an annual income of $131,040, and therefore exceeds the $48,849.00 which is currently recognized as the applicable median family income for two-member households in Texas.

[5]  Trustee's Ex. 1.  Official Form 22C is now utilized in Chapter 13 cases to implement the provisions of 11 U.S.C. §§1325(b)(3) and (b)(4).

[6]  The Debtor estimated that general unsecured indebtedness would total $69,090.00.

to the filing of this case.  In lieu of her former teaching salary of $3,915 per month, it is

undisputed that the Debtor now only receives a monthly annuity payment of $1,906.52

from the Teacher Retirement System of Texas based upon her age and her 25 years of

teaching experience.  The Debtor contends that this conversion to retirement income

warrants a lower mandatory payment amount and that her proposed plan base of $60,050

is more than sufficient to meet the §1325(b)(1)(B) requirement.

As to the sufficiency of the contribution of the Debtor's non-filing spouse, Joe A.

Louviere, toward the payment of the family household expenses, the Debtor tendered a

somewhat disjointed evidentiary presentation in an effort to demonstrate that her plan is

proposed in good faith. After filing an original Schedule I, which presented the monthly

gross income of Mr. Louviere as $7,005 and his net monthly income as $4,814,[7] the

Debtor subsequently filed an amended Schedule I that omitted income information for the

Debtor's non-filing spouse altogether and included, in lieu thereof, a "husband's

contribution to household" of $2,643.[8]  However, except for the exclusion of "husband's

bills" as an itemized personal expense, the amount of expenditures set forth in the

Debtor's amended Schedule J was exactly the same as in the original — $3,792 — and no

objection was raised to the legitimacy of the expenses set forth in that schedule.  Further,

though testifying generally about the reduction of her husband's hours of employment,

the Debtor could not revise with any degree of specificity the information otherwise

---

[7]  Trustee's Ex. 2.

[8]  Debtor's Ex. A.

contained in the schedules regarding her husband's income, other than confirming that he deposits $200 per week into her bank account. The Trustee therefore contends that the Debtor's evidentiary presentation was insufficient to overcome his good faith objection.

## Discussion

Much has been written about the effect of the BAPCPA amendments upon the Chapter 13 confirmation process. Though the implementation of a required commitment period based upon a debtor's past income as defined by §101(10A) of the Bankruptcy Code has provided a degree of predictability to the term of Chapter 13 plans, the use of past income history as a component to determine the amount of money a Chapter 13 debtor is required to dedicate in the future under §1325(b) has been a bit more problematic.

Courts across the country have recognized that, though the use of Official Form 22C, rooted in the definition of "current monthly income" set forth in §101(10A), and derived from income received in the pre-petition period,[9] works satisfactorily to produce a calculation of disposable income which in most instances will become the amount of "projected disposable income" required for plan confirmation under §1325(b)(1)(B), such a result is not guaranteed. This is because ". . . 'projected disposable income' under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of the plan," *In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D.

---

[9] *See supra* note 3.

-5-

Tex. 2006), and the *projected* disposable income of the debtor may vary from the statutory disposable income calculation if "the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form 22C are not commensurate with a fair projection of the debtor's budget in the future." *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006), as cited in *In re Sparks*, 360 B.R. 224, 228 (Bankr. E.D. Tex. 2006). *See also, e.g., Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302 (B.A.P. 1st Cir. 2007), *Pak v. eCast Settlement Corp. (In re Pak)*, 378 B.R. 257 (B.A.P. 9th Cir. 2007), *Hamilton v. Lanning (In re Lanning)*, 380 B.R. 17 (B.A.P. 10th Cir. 2007); *but see, e.g., In re Hanks*, 362 B.R. 494 (Bankr. D. Utah 2007); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

Such an exception has now been presented to this Court. There is no factual dispute in this case that there is a substantial disparity between the average monthly income received by the Debtor in the six calendar months prior to the filing of her case, as reflected in her Official Form 22C, and the monthly income which is now available to her from which she can fund a Chapter 13 plan in the applicable commitment period of the next five years. Though there is agreement on that salient fact, there is substantial disagreement as to its impact.

The Trustee asserts that the significant reduction in the amount of income available to the Debtor simply has no effect. The Trustee contends that, even under these facts, the application of the means test irrevocably establishes what must be paid to unsecured

-6-

creditors under this Debtor's plan in this case and, though it was not expressed in these precise terms, the Trustee essentially argues that this Debtor is precluded on feasibility grounds from ever confirming a Chapter 13 plan (at least in this case)[10] because of the irreconcilable conflict which exists between the 22C calculation and the Debtor's ability to pay based upon her current income stream. Yet this Court concludes that this conflict need not be reconciled and that the Trustee's disposable income objection should be overruled.

While those involved in the bankruptcy process often generically refer to the incorporation of the §707(b) means test into the calculation of disposable income in Chapter 13 cases, a precise examination reveals that an important component of the Chapter 7 means test is actually omitted from consideration in Chapter 13 and that omission is critical in cases in which the debtor's income has been substantially reduced from previous levels.  While §707(b)(2)(B) contemplates the possibility of the existence of "special circumstances that justify additional expenses *or adjustments of current monthly income* for which there is no reasonable alternative,"[11] thereby allowing a Chapter 7 debtor to document a downward adjustment to income which can erase the presumption of abuse if that adjustment carries the ultimate calculation below the

---

[10] A dismissal of this case and a subsequent re-filing by this debtor would root the CMI calculations in her current retirement income rather than her former teaching income and eliminate this problem.  However, such a costly and purposeless exercise is not required under these circumstances.

[11] 11 U.S.C. §727(b)(2)(B)(i) (emphasis added).

threshold amount,[12] that authority to adjust "current monthly income" due to changed circumstances is not actually incorporated into Chapter 13.  An examination of §1325(b) reveals that the provisions of §707(b)(2)(A) and (B) are incorporated into the disposable income calculation only for a limited purpose — to determine the "[a]mounts reasonably necessary to be *expended* under paragraph (2) . . . ,"[13] i.e., those expenditures reasonably necessary for the maintenance and support of the debtor and any dependents and/or for the operation of the debtor's business.  Thus, while Chapter 7 provides for an adjustment to income in its application of the means test, no such adjustment to CMI is available in the Chapter 13 incarnation.[14]  This limitation is reflected on line 57 of Form 22C which addresses only additional expense deductions, not adjustments to CMI.

As a result, though it undoubtedly has an impact in most cases, the CMI

---

[12]  11 U.S.C. §727(b)(2)(B)(iv).

[13]  11 U.S.C. §1325(b)(3) (emphasis added) which provides that:

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than—
     (A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
     (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
     (C) in the case of a debtor in household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4.

[14]  Expressed as components of the subtraction equation we of the more mature set learned in elementary school, the §707(b) standards are incorporated into the disposable income calculation under §1325(b) only for the purpose of discovering the value of the subtrahend [the number to be subtracted], not the minuend [the number from which the subtraction will take place].

calculation remains meaningful to the determination of projected disposable income under §1325(b)(1)(B) only to the extent that the income stream upon which it is based remains constant.  Once a substantial change in circumstances occurs which significantly alters the income stream once enjoyed in the pre-petition period by a Chapter 13 debtor,[15] the utility of that 22C computation for the purpose of determining projected disposable income under §1325(b)(1)(B) is undermined and it must be discarded under the statute in favor of a more contemporaneous net income calculation derived from Schedules I[16] and J which recognizes and incorporates the changes occurring in the debtor's real-life circumstances.[17]  Under the statutory scheme, the 22C calculation of disposable income simply is what it is, and, if that calculation has been rendered useless by changed circumstances, the Debtor as the plan proponent is under the evidentiary burden to demonstrate, as a component of its confirmation case-in-chief, the existence of those changed circumstances under which the utility of the 22C calculation has been nullified and which now mandate a calculation of "projected disposable income" without reliance

---

[15]  Of course, the calculation can be altered in both directions.  If current circumstances reflect an increase in the availability of income over that revealed by the CMI calculation, that income increase must be disclosed and applied to plan payments for the benefit of creditors under §1325(b)(1)(B).

[16]  The Schedule of Current Income (Schedule I) seeks the disclosure of the average or projected monthly income received by a debtor and her spouse as of the time of the filing of the bankruptcy case in contrast to the calculation of current monthly income under §101(10A), which averages the monthly income received by such persons during the six calendar months prior to the bankruptcy filing date.

[17]  Thus, there is no statutory support for, and no purpose served by, the forced insertion of "updated" income figures into the 22C calculation to correct any projection therefrom nor any support for this Debtor's maneuver of submitting the revised income figures as a "special circumstance" expense claim under Part VI of Form 22C.  As noted earlier, no adjustment of CMI is authorized under §1325(b)(3).

upon a CMI component.[18]

This adjustment does not compromise the statutory goal of BAPCPA.  It simply undergirds the significance of the term "projected" disposable income as utilized in §1325(b)(1)(B).  It reflects this Court's prior determination that the "projection" of a 22C calculation of disposable income could still be "increased by the Court as the result of a more detailed examination of the reasonableness of the debtor's expenditures or . . . reduced because the debtor demonstrates a substantial change in circumstances which decreases the availability of future income."  *Sparks*, 360 B.R. at 228.  It reveals that, in its efforts to utilize the CMI calculation in Chapter 13 cases, Congress did not thereby intend to impose an impossible condition upon a debtor by requiring the dedication of income that everyone in the case admits no longer exists in the post-petition period.  If the term "projected" disposable income is to have any meaning, it must be rooted in reality and based upon a debtor's actual ability to perform.  Therefore, because it is undisputed that the Debtor's post-petition income has materially decreased from the average monthly sum she previously received as a teacher in the six-month period prior to filing, the determination of disposable income under §1325(b) as calculated on line 58 of the Debtor's Form 22C has been rendered impotent as the platform from which to project the

---

[18]  Though the revised statutory language now used in §1325(b)(1)(B) requires dedication of projected disposable income only to unsecured creditors as opposed to plan payments in general, a debtor who establishes a case of changed circumstances as to income and the necessity to look beyond Official Form 22C for the calculation of "projected disposable income" will by necessity meet the §1325(b)(1)(B) standard by dedicating to plan payments all of the monthly net income realized by the debtor.

disposable income that the Debtor is required to tender to obtain confirmation of the plan in this case.[19]  Accordingly, the Trustee's disposable income objection based upon a mandated applicability of the 22C disposable income calculation must be overruled.

However, disputes remain over the information (or lack thereof) offered by the Debtor in support of her confirmation request based upon Schedules I and J.  As initiated by his objection regarding the Debtor's amendments to those schedules which deleted required income information regarding her non-filing spouse in favor of a discretionary insertion of $2,643.00 into Schedule I as her "husband's contribution to household," and which was later expanded by consent at the hearing into a holistic consideration of the scope of the household contributions tendered by the Debtor's non-filing spouse, the Trustee questions whether the Debtor has tendered all of her projected disposable income and whether she has satisfied her evidentiary burden to establish that her plan is proposed in good faith by properly disclosing the income of her non-filing spouse and that her spouse is sufficiently contributing to the household expenses of the Louviere family.

In regard to the presentation of her financial information, the Debtor clearly erred in the manner in which she amended her Schedule I with reference to the income of her

---

[19] However, despite the gap in statutory language which precludes making adjustments to the calculation of "current monthly income" and the resulting impotence of CMI as a tool for projecting disposable income, a debtor's CMI calculation is not rendered moot for all purposes under these circumstances.  A debtor's CMI calculation, as extrapolated into an annualized amount, still determines the applicable commitment period of the plan under §1325(b)(4) and invokes the expense ceilings for an above-median income debtor under §1325(b)(3).  To the extent that a sound argument might be presented that a mandated extension of the plan to 5 years and the application of the means test expense ceilings should not be invoked by an income figure which is no longer accurate, those concerns would have to be addressed by statutory amendment.

non-filing spouse.  Schedule I clearly requires that detailed income figures for a spouse must be provided "by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed."[20]  Thus, in every instance, a debtor is compelled to disclose all of the monthly income received by a non-filing spouse as of the date of filing.  That requirement cannot be circumvented by the unilateral insertion of a household contribution amount from a non-filing spouse as a single line item in Schedule I.

However, those deficiencies do not preclude the confirmation of the plan in this instance.  Despite the amended schedules, the original Schedule I and Form 22C both reveal the income of the non-filing spouse in this case.  Though somewhat distorted by the maze created by the Debtor's apparent misinterpretation of *Charles*, her misguided

---

[20]  See Official Form 6I.   It appears from the Debtor's arguments that such amendments might have been based upon a misconstruction of certain language contained in *In re Charles*, 375 B.R. 338 (Bankr. E.D. Tex. 2007).  While *Charles* also involved an examination of the impact of the income of a non-debtor spouse after BAPCPA, it decided whether the projected availability of additional income attributable to a non-debtor spouse in the post-petition period mandated a corresponding increase in the debtor's plan payment under the disposable income requirement.  The Court ruled that the amendment to §101(10A) precluded such an interpretation of §1325(b).  However, in *Charles*, the income of the non-debtor spouse was fully disclosed and no party questioned the legitimacy of the disclosed amount paid by the non-filing spouse for household expenses.  Thus, read in context, *Charles* does not preclude a challenge to the allocation of household expenses or somehow authorize a debtor to shield the total income of the non-filing spouse from disclosure.  However, the application of §1325 since BAPCPA to particular facts remains in flux and perhaps the language in *Charles* portended a greater change than has actually occurred.  Thus, to the extent necessary, this clarifies that a challenge to the allocation of household expenses between a debtor and a non-filing spouse remains viable by:  (1) bringing a disposable income objection to test the validity of the marital adjustment taken in the calculation of "current monthly income;"or (2) challenging the good faith of the debtor in otherwise proposing a plan in which she is absorbing more than her fair share of the household expenses.  Thus, the duty of a Chapter 13 debtor to demonstrate, upon challenge, that the bankruptcy estate has not assumed responsibility for a disproportionate share of the reasonable household expenses remains essentially unchanged from pre-BAPCPA days.

effort to present a revised "post-petition" 22C, and her disjointed testimony about post-petition fluctuations in her husband's income, the evidence, once untangled, demonstrates that the Debtor's projected monthly income of $1,906 constitutes 28.4% of the net family income, with her husband's net monthly income of $4,814 constituting 71.6% of the net family income. Subtracting her proposed plan payment, the Debtor will at a maximum contribute $1,156 per month during the pendency of her plan toward her family's total monthly household expenses of $3,792. As a result, regardless of the Debtor's difficulty in quantifying her husband's income and expenditures, the evidence clearly establishes that the burden to meet the family household expenses of $3,792 per month in this case falls substantially upon the non-filing spouse who is required to contribute a minimum of $2,636, or 69.5% of the funds necessary to meet those household expenses. This contribution occurs regardless of whether it is funneled through the Debtor's bank account and, based upon the original schedules, the percentage allocation of expense handled by each spouse is substantially equivalent to the percentage of net income actually produced by that spouse. The evidence further establishes that, notwithstanding any subsequent fluctuations in the husband's income, there has been no change in the amount of monthly household expenses, no change in the Debtor's proposed plan payment, and, therefore, no change in the percentage share of the household expenses which the Debtor is assuming. Thus, even if the husband's net monthly income has decreased in the post-petition period, that has only resulted in a corresponding increase in

the proportion of his income which is being devoted to the satisfaction of monthly household expenses.[21]  Under whatever standard one might wish to apply, that does not constitute an inequitable apportionment of the household expenses nor can it legitimately be said that the Debtor in this case is improperly diverting potential plan payments in order to subsidize the lifestyle of her non–filing spouse.  Therefore, the Debtor has satisfactorily demonstrated that the bankruptcy estate has not assumed a disproportionate share of the reasonable family expenses in this case and the Trustee's objection based upon a lack of good faith must be denied.

Accordingly, the Court concludes that the objections of the Chapter 13 Trustee must be overruled and that, in light of the Debtor's compliance with all other prerequisites of § 1325(a), the Debtor's Chapter 13 plan should be confirmed.  This memorandum of decision constitutes the Court's findings of fact and conclusions of law[22] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014.  A separate order will be entered which is consistent with this opinion.

Signed on 04/04/2008

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[21]  For example, if the husband's net monthly income has now decreased to $3000.00, the amount of his net income dedicated to satisfaction of household expenses has risen from 54.8% under the original schedules to 87.9% since the evidence establishes that he is still contributing $2,636.00 per month toward the monthly household expenses of $3,792.00.

[22]  To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such.  To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.  The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.